OLIVER v. UNITED STATES.

SELLERS v. SAME.

Nos. 2208, 2217.

Circuit Court of Appeals, Tenth Circuit.

June 9, 1941.

Rehearing Denied July 11, 1941.

246

C. Ray Smith, of Chicago, Ill. (Hugh B. Woodward and R. F. Deacon Arledge, both of Albuquerque, N. M., on the brief), for appellant H. S. Oliver.

Hugh B. Woodward, of Albuquerque, N. M. (C. Ray Smith, of Chicago, Ill., and R. F. Deacon Arledge, of Albuquerque, N. M., on the brief), for appellant C. P. Sellers.

Everet M. Grantham, of Santa Fe, N. M. (Gilberto Espinosa and Donald B. Moses, both of Albuquerque, N. M., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellants appeal from a judgment in pursuance of a conviction upon an indictment charging the appellants and twenty-five other named persons with unlawfully conspiring, under 18 U.S.C.A., § 88, to violate 18 U.S.C.A., § 338, by forming or intending to form a fraudulent scheme and to use the mails in furtherance of it.

The separate appeals are based upon a common record. The briefs present a united attack on the judgment below. The cases were consolidated for trial here, and the questions presented will be discussed together, except where proof requires singular treatment.

The indictment, containing one count, charges that from March 9, 1937, to March 14, 1940, the defendants named, unlawfully conspired to devise a fraudulent scheme for the sale of oil and gas leases located in the State of New Mexico, to the public generally, by false and fraudulent practices and representations made by the defendants personally, through agents, and by the use of the mails.

According to the allegations of the indictment, Dorothy Heard, one of the named

defendants, would and did falsely and fraudulently represent herself to be an independent wholesale dealer in oil and gas leases on lands which she would and did purchase from the State of New Mexico in large tracts for $0.05 (five cents) per acre. The leases were divided into small tracts and assigned to the other named defendants, including the appellants, on their order, and by them resold to the public generally at a price greatly in excess of their actual value.

Dorothy Heard represented to the public that she had no privity with the other named defendants including these appellants, and no interest in the sale of the oil and gas leases, except to the defendant salesmen on their order; when in fact she was cooperating with the other defendants under a mutual understanding amounting to a joint venture.

To effectuate the purposes of the fraudulent scheme, and to conceal the identity and whereabouts of the defendant salesmen, Dorothy Heard rented certain boxes in the United States Post Office at Santa Fe, under the names of Dorothy Heard, Heard's Clients, Petroleum Engineers Company, and Francis Warn. These Post Office boxes were to be used by the defendant salesmen to receive mail for redelivery by Dorothy Heard to them at their true addresses.

Dorothy Heard would and did at the request of the defendant salesmen, send out by letter, false and fraudulent information concerning the value of the oil and gas leases; when expedient, conceal the identity and whereabouts of the defendant salesmen from purchasers of oil and gas leases; give letters of recommendation to the various salesmen, and otherwise actively promote the sale of the leases to the public generally.

The defendant salesmen, including the appellants, would and did falsely misrepresent the value of the oil and gas leases in that they would represent that the said leases were within a few miles of producing wells and within a district or area controlled by a large oil company which was about to start drilling operations. The defendant salesmen represented that large oil companies were desirous of securing available acreage for a drilling block and that the leases which they proposed to sell could be resold within a short time at an immense profit to the purchasers.

The defendant salesmen further falsely represented to individuals who had previously purchased oil and gas leases from other defendant salesmen, and who were dissatisfied with their purchases, that they were representing the State of New Mexico and were giving them an opportunity to purchase other leases in order to recoup their losses, or that the prospective purchasers had certain homestead preference rights which they could exercise by the purchase of valuable oil leases in the state of New Mexico.

The indictment further charged that it was the object of the said conspiracy that the mails of the United States would be used for the purpose of carrying into execution the scheme so devised.

Nine overt acts were charged, all subsequent to the formation of the conspiracy and before the filing of the indictment. Each of the nine overt acts constitutes a separate use of the mails designed to effect the object of the conspiracy.

The appellants contend first that the proof is at variance with the allegations of the indictment in that it fails to prove one large conspiracy, but if anything, only proves different and disconnected smaller ones; second, the intent to use the mails being an essential ingredient of the offense charged, the evidence does not sufficiently prove that the appellants used, intended to use the mails, or intended that the mails would be used in furtherance of the objects of the conspiracy; third, by refusing to submit certain requested instructions to the jury, the court did not adequately present the theory of the appellants' defense; fourth, the court committed error in refusing to apply the rule with respect to the separation of witnesses as requested by the appellants.

■ The proof amply supports the allegations of the indictment. Dorothy Heard was the axis about which the plan of operations revolved. She operated as the "State and Federal Land Service Office" at Santa Fe, New Mexico, boxes 1195 and 1197. She also rented boxes 981, 1245, 1062 and 691. She invited the defendants to use these Post Office Boxes as a clearance for their mail, and otherwise actively cooperated with the defendants, including these appellants, by writing to prospective purchasers of oil and gas leases, encouraging them to purchase the leases, by falsely representing the value of the same whenever and wherever she could be of assistance to any of the salesmen in effecting a sale.

From time to time she corresponded with the various salesmen concerning prospective purchasers. In fact, the record is replete with evidence showing conclusively that Heard (her office and office facilities, including the post office boxes) was the clearing house for all of the defendants, including these appellants, in promoting the sale of these oil and gas leases. That the defendants and each of them effectively cooperated with each other and with Dorothy Heard in the sale of the leases is shown plainly by the fact that the various defendant salesmen met with each other to discuss ways and means of selling the leases to the public; they travelled in pairs; sometimes one would pose as the representative of a large company; at other times one would represent himself to be a geologist. After one of the defendant salesmen had sold an individual an oil and gas lease, other salesmen would follow up to "reload" him. In fact, every devious plan known to the art of high pressure salesmanship was employed.

It would serve no useful purpose to delineate the numerous instances of the bold and daring acts on the part of the defendants named, including the appellants, which show conclusively that there was one large comprehensive conspiracy on the part of all the defendants named to defraud the public generally. The various salesmen masqueraded under aliases whenever and wherever it was convenient and necessary to conceal their identity. On occasions the defendant Oliver used the name Conley and the defendant Sellers used the name Charles Steele. Most of the defendants named in the indictment used various aliases.

The defendant Oliver operated as a partner of one Dunlap, a defendant named in the indictment, and together they called on various prospective purchasers. While the appellant Oliver and the defendant Dunlap were working together, and specifically on March 18, 1937, they sold one Oscar Pearson a lease on 160 acres of land in Eddy County, New Mexico, for the sum of $160. Dunlap signed the receipt for the purchase price, giving his Post Office Box as 487, Santa Fe, New Mexico. In due course, and through the mail, Pearson received the lease executed by Dorothy Heard, as attorney-in-fact for A. C. Conley.

On March 23, 1937, Oliver and Dunlap sold one Christ Rast, living in Wendell, Idaho, a lease on 160 acres of land in Eddy County, New Mexico. They represented that they had only 640 acres of leases left which must be divided into smaller tracts before the oil company would buy them. They represented that he would receive returns from the lease within about sixty days. Dunlap executed the receipt to Rast for $160, giving his address as Box 1284, Santa Fe, New Mexico, The lease was executed by Dorothy Heard on the 9th day of April, 1937, and delivered to Rast.

On March 19, 1937, Dunlap and Oliver sold William C. and Pearl Hallowell a lease on 80 acres of land in Eddy County, New Mexico. The receipt for the purchase price was signed by appellant Oliver, who gave his address as Box 489, Santa Fe, New Mexico, In due course the Hallowells received a lease through the mail, executed by Dorothy Heard. The Hallowells had previously purchased leases on lands in New Mexico from other named defendants.

On March 20, 1937, Dunlap and Oliver sold one J. A. Campbell, living at Whiting, Idaho, an oil and gas lease on 160 acres of land located in New Mexico. Campbell had previously purchased leases from other named defendants. The receipt for the purchase price was executed by the appellant, Oliver, giving his address as P. O. Box 489, Santa Fe, New Mexico.

On March 31, 1937, Dunlap wrote a letter to Heard[1] which clearly and unmistak-

---

1 The letter reads in part as follows:

"Please file these in A. C. Conley's name and as an address P. O. Box 489. I'm enclosing also $1.00 for the rental on my box. Please pick up all mail to me and also S. H. Oliver.

"We will file in Chaves for a while. After we finish here and in Colo will come down to

"'See America First'

Santa Fe. Would like very much to check up with you on some names in the East & Make a quick trip this spring back there before the boys heat it up too much. Think this over and as you recall the names that might be good jot them down & we will make some money.

"I'd like also for you to look at the Dailey Recordings for the last 3 weeks & see if there are any new Colorado names. Send them to me % Brown Palace Hotel, Denver. Will be there 4/2/37. Yours Dunlap."

ably reveals the plan and the course of conduct which the defendants pursued in effecting the purposes of the conspiracy, and the part which the appellant Oliver played in it.

The evidence shows that the appellant Sellers, at various times, worked with the defendant Goss, and the defendant Aaby in the sale of oil and gas leases. The plan of attack was similar in design and purpose to that hereinbefore related.

On February 25, 1938, the defendant Goss, addressed a letter to Heard, ordering oil and gas leases and giving directions for their delivery by mail, saying "I had a letter from Aaby on my return, and he is in New York working with Preston Sellers (identified as the appellant Sellers) who is a mighty good man and should send you in lots of business * * *."

On April 2, 1938, the defendant Aaby addressed a letter to Dorothy Heard from Harrisburg, Pennsylvania, ordering leases, directing their delivery, and stating that "Mr. Sellers will work with me as far as Pittsburgh."

Appellant Sellers and defendant Aaby sold one Susan McMinn in Carbondale, Pennsylvania, a lease on 80 acres of land in New Mexico. The lease, executed by Dorothy Heard, was received by the purchaser through the mail.

In May of 1938, appellant Sellers and defendant Goss sold two oil and gas leases to Jesse L. Burt, Lanesboro, Iowa. The leases were received through the mail. Upon inquiry from Burt, Heard recommended the purchase of the leases.

On April 11, 1939, the defendant Aaby, under the name of Allen, and the appellant Sellers, under the name of Stevens, called on one C. A. Browman, at Denver, Colorado, who had previously purchased an 80-acre lease in New Mexico, inquired if he wanted to sell his lease, and then by false representations, obtained $140 for other leases in the State of New Mexico. He received the lease, executed by Dorothy Heard, through the mail.

In June, 1938, the appellant, Sellers, sold an oil and gas lease to George W. Sharp at St. Louis, Missouri. The lease was delivered by Dorothy Heard to the purchaser through the mail.

The record shows numerous other instances wherein the appellant Sellers, using aliases, and in company with other defendants, sold oil and gas leases on lands in New Mexico, which leases were delivered by the defendant Heard, through the mail.

The rule applicable to the appellants' first contention is not in dispute. When one large conspiracy is specifically charged, proof of different and disconnected smaller ones will not sustain conviction. Nor will proof of crime committed by one or more of the defendants, wholly apart from and without relation to others conspiring to do the thing forbidden, sustain conviction. Marcante et al. v. United States, 10 Cir., 49 F.2d 156; Wyatt v. United States, 3 Cir., 23 F.2d 791, certiorari denied 277 U.S. 588, 48 S.Ct. 436, 72 L.Ed. 1002; Parnell v. United States, 10 Cir., 64 F.2d 324; United States v. Wills, 3 Cir., 36 F.2d 855; and Telman v. United States, 10 Cir., 67 F.2d 716.

The proof in this case, however, conclusively shows that all the defendants had a similar general purpose in view—the sale of oil and gas leases on New Mexico lands to the public generally. Each of the defendants was cooperating in privity with the others toward the same common end. See Telman v. United States, supra, Cf. Marcante v. United States, supra, and United States v. Wills, supra.

A mutually implied understanding is sufficient so far as the combination or confederacy is concerned, and the agreement is generally a matter of inferences, deduced from the acts of the persons accused which are done in pursuance of an apparent criminal purpose. It is rarely susceptible of proof by direct evidence, and may be deduced from the conduct of the parties and the attending circumstances. Telman v. United States, supra.

"The crime charged in the indictment became complete the instant the conspiracy was formed (provided only that there could be no prosecution unless followed by some overt act), whether the object of the conspiracy ever was consummated, or, if consummated, whether the result, considered apart, was conformable to law or the reverse." United States v. Manton, 2 Cir., 107 F.2d 834, 846; Goldman v. United States, 245 U.S. 474, 38 S.Ct. 166, 62 L. Ed. 410.

"The gist of the offense of conspiracy as defined by § 37 of the Criminal Code, 18 U.S.C. § 88, is agreement among the conspirators to commit an offense attended by an act of one or more of the

conspirators to effect the object of the conspiracy." United States v. Falcone, 311 U.S. 205, 61 S.Ct. 204, 207, 85 L.Ed. 128.

■ The conspiracy charged here contemplated the violation of 18 U.S.C.A., § 338. "The elements of the offense defined in § 338, supra, are (1) a scheme devised or intended to be devised to defraud, or for obtaining money or property by false or fraudulent pretenses, representations, or promises, and (2) the use of the United States mails for the purpose of executing the scheme or attempting so to do." Graham v. United States, 10 Cir., 120 F.2d 543, decided by this court on May 27, 1941, Stryker v. United States, 10 Cir., 95 F.2d 601, 604; Morris v. United States, 8 Cir., 7 F.2d 785, 790.

■ It is essential to the guilt of one charged with a conspiracy under 18 U.S.C.A. § 88, to prove an intent not only to defraud, but also to defraud by the use of the mails. Schwartzberg v. United States, 2 Cir., 241 F. 348; Farmer v. United States, 2 Cir., 223 F. 903, certiorari denied 238 U.S. 638, 35 S.Ct. 940, 59 L.Ed. 1500.

■ ■ The charge of an agreement to violate § 338, supra, is a charge of an intention to use the mails in carrying out the scheme to defraud. Frohwerk v. United States, 249 U.S. 204, 39 S.Ct. 249, 63 L.Ed. 561; and Morris v. United States, supra. But it is not essential to the guilt of the appellants that they actually and physically used the mails in furtherance of the conspiracy in order to manifest intent. Burns v. United States, 10 Cir., 279 F. 982; Schwartzberg v. United States, supra; Preeman v. United States, 7 Cir., 244 F. 1, 18, Farmer v. United States, supra.

It is clear that the accomplishment of the conspiracy to which the appellants were parties, contemplated the use of the mails. Indeed, the use of the mails was essential to the accomplishment of the objects of the conspiracy. The defendant Heard, maintained her establishment in the City of Santa Fe, New Mexico. The defendant salesmen, including the appellants, were traveling over the country selling oil and gas leases in many different states. Some of the defendants executed receipts for money obtained for oil and gas leases, giving a Post Office box at Santa Fe, New Mexico as an address. The defendants, in cooperation with each other, and particularly with Dorothy Heard, used the mails freely and indiscriminately to give directions to Dorothy Heard concerning the delivery of the leases sold. It is plain that the appellants and each of them knew that the mails were used in the furtherance of the objects of the conspiracy, and thus guilty knowledge was not only imparted to them, but they evidenced a wrongful intention to use the mails. Burns v. United States, supra; Schwartzberg v. United States, supra; Preeman v. United States, supra; Farmer v. United States, supra.

■ The question of intent on the part of the appellants was properly submitted to jury under the facts disclosed by the record.

■ The appellants complain of the failure of the court to give certain requested instructions relating to their theory of the case. The requested instructions bear upon the question of whether or not the appellants were parties to the conspiracy as charged in the indictment, and the sufficiency of the circumstantial evidence to prove the guilt of the defendants. It is sufficient to say that the instructions given, adequately and accurately cover the issues presented by the indictment and the proof submitted in support thereof. They were written and submitted to the jury for its use in deliberating upon a verdict.

The instructions having adequately and correctly covered the applicable law and the facts, it was not error for the court to refuse to give requested instructions covered by those given. Troutman v. United States (Young v. United States), 10 Cir., 100 F.2d 628; Tingley v. United States, 10 Cir., 34 F.2d 1.

■ ■ Absent affirmative showing of abuse of discretion or manifest prejudice, the exclusion of witnesses from the court room while not testifying is addressed to the trial court's sound discretion. Hood et al. v. United States, 8 Cir., 23 F.2d 472; Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010; Tinkoff v. United States, 7 Cir., 86 F.2d 868, certiorari denied 301 U.S. 689, 57 S.Ct. 795, 81 L.Ed. 1346; Twachtman v. Connelly, 6 Cir., 106 F.2d 501. There is nothing in the record to indicate that the failure to exclude the witnesses from the court room while not testifying prejudiced the appellants in the trial of the case. There was no error in the refusal to exclude the witnesses.

The judgments of the trial court are affirmed.