MATTER OF M——

In DEPORTATION Proceedings

A-2902662

*Decided by Board February 1, 1960*

Crime involving moral turpitude—Conviction under 18 U.S.C. 88 (now 18 U.S.C. 371) of conspiracy to violate Internal Revenue Act involves moral turpitude where object was to defraud U.S.—Fair hearing.

(1) Conviction under 18 U.S.C. 88 (now 18 U.S.C. 371) of conspiracy to violate the Internal Revenue laws involves moral turpitude when a composite of all specifications in the indictment shows that the object of the conspiracy was to defraud the United States by avoiding taxes. (*Matter of G——*, 7 I. & N. Dec. 114, distinguished.)

(2) That respondent was awaiting trial on a criminal indictment at the time of the deportation proceeding did not preclude a fair hearing on the deportation charge relating to prior criminal convictions.

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—After entry convicted of two crimes involving moral turpitude, to wit: Conspiracy to violate the Internal Revenue laws, 18 U.S.C. 88 (2 offenses).

BEFORE THE BOARD

Discussion: The respondent appeals from an order entered by the special inquiry officer on August 10, 1959, directing his deportation as an alien who after entry has been convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, to wit, conspiracy to violate the Internal Revenue laws, section 88, title 18, U.S.C. (two offenses). Exceptions are directed to matters of procedure and to the legal conclusion that after entry respondent has been convicted on two separate occasions of crimes involving moral turpitude.

The respondent, a native and citizen of Italy, male, married, 59 years of age, last entered the United States through the port of New York for permanent residence on July 4, 1922. He was convicted on December 29, 1938, in the United States District Court for the Northern District of Indiana (Hammond Division) and sentenced to 180 days' imprisonment on a "finding of guilty by (the) court" of the offense charged in a single count indictment,

to wit: "Conspiracy to violate Internal Revenue Act, section ——, Title 18, U.S.C., * * * sentenced on one count of indictment" (Exh. 11).

Respondent on the 10th day of June, 1941, was again convicted in the same court (South Bend Division) on a "plea of guilty" of the offense charged in a single-count indictment, to wit: "Violation of Internal Revenue Code, section 88, Title 18, * * * Internal Revenue Conspiracy" (Exh. 12). He was sentenced to imprisonment for 2 years.

The respondent during the hearing stated his name for the record, admitted that he was served with an order to show cause and notice of hearing and thereafter upon advice of counsel stood mute, claiming privilege under the Fifth Amendment to the Constitution of the United States.[1] The evidence relied upon by the special inquiry officer to establish deportability is found in a sworn statement taken from the respondent on April 27, 1959 (Exh. 4), and identified by both the interrogating immigration officer and the transcriber; the court records of the conspiracy convictions in 1938 and 1941 of a person by the same name as the respondent (Exhs. 11 and 12), and testimony of 4 witnesses who identified 6 fingerprint records (Exhs. 15–20) as those of a person by the same name as respondent who was served with an order to show cause in this proceeding, served sentences in Federal institutions which coincide with those imposed by the United States District Court as shown in the court records entered as exhibits 11 and 12 and was fingerprinted as an alien on September 23, 1940 (Exh. 18).

There are 36 assignments of error. They charge error in matters of procedure and law. They will be grouped for discussion under the following headings:

(1) Abuse of the special inquiry officer's discretion;
(2) Proceedings conducted in an atmosphere of prejudice;
(3) Error in admitting the documentary evidence relied upon by the Government;
(4) The quantum of proof; and
(5) The issue of deportability.

## I. ABUSE OF DISCRETION

Error is assigned to the denial of two motions submitted by rspondent's counsel during the course of the hearing. Counsel urgthat there existed no urgency in proceeding with the hearing athe interests of the Government did not require dispatch. Counsalso urges that the special inquiry officer erred in failing to tminate the hearing on the basis of his motion alleging that t

---

[1] Respondent invoked the Fifth Amendment on some 86 occasions during hearing.

536

order to show cause fails to state a cause of action against the respondent.

We find no abuse of discretion on the part of the special inquiry officer in denying the motions. The order to show cause was served upon the respondent on June 5, 1959. There were postponements prior to the hearing of July 6, 1959. Counsel was retained by the respondent on June 14, 1959. The fact that a criminal action was pending against the respondent at the time of the hearing did not prejudice any rights guaranteed him under the Fifth and Sixth Amendments to the Constitution of the United States. The respondent, in defending a deportation charge based upon prior criminal convictions, was in no danger of self-incrimination.

Counsel maintains that the special inquiry officer abused his discretion when he failed to grant a continuance and this action placed the respondent in a position of waiving his right to apply for discretionary relief under the immigration laws. It is argued that respondent was not in a position to make the required showing of good moral character during the deportation proceeding because that would amount to waiving his privilege against self-incrimination in the pending criminal case.

The respondent has the burden of establishing his eligibility for discretionary relief (8 CFR 242.16(e)). An alien seeking a favorable exercise of discretion cannot limit the area of the Attorney General's inquiry by refusing to answer pertinent questions on the ground that his answers may incriminate him. A full disclosure of all pertinent information is inherent to an act of grace by the sovereign. We find no abuse of discretion on the part of the special inquiry officer in refusing to grant a continuance to permit the termination of the criminal case then pending against the respondent. Cf. *Matter of Y——*, 7 I. & N. Dec. 697 (B.I.A., Mar. 26, 1958). We agree with the special inquiry officer that a continuation was not warranted under the circumstances.

Counsel urges that the special inquiry officer erred in denying respondent's motion to terminate the proceedings on the ground that the order to show cause did not specify offenses which are crimes involving moral turpitude. Section 242(b) of the Immigration and Nationality Act (8 U.S.C. 1252(b)) provides, *inter alia*, "the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held."

The order to show cause served upon the respondent informed him that he was "subject to be taken into custody and deported pursuant to the following provision of law:

Section 241(a)(4) of the Immigration and Nationality Act, in that you at any time after entry have been convicted of two crimes involving moral tur-

562713—61——36

pitude not arising out of a single scheme of criminal misconduct, to wit, conspiracy to violate Internal Revenue Act, section 88, Title 18, U.S.C., two offenses."

The order to show cause fully informed the respondent that his deportation was sought because of convictions on December 29, 1938, and June 10, 1941, for conspiracy to violate the Internal Revenue laws (allegations 4 and 5 of Exh. 1). The respondent was also informed that he was a native of Italy, who last entered the United States through the port of New York on July 4, 1922, and that he would be accorded a hearing in the New Post Office Building at Chicago, Illinois, on June 15, 1959, at 8:30 A.M. (Exh. 1).

Counsel concedes that in an immigration proceeding "we are not held to the strictness that is required in indictment (criminal) proceedings." It has been held that an indictment charging conspiracy to unlawfully engage in the liquor business and to conceal whiskey with intent to defraud the Government of the tax thereon is not deficient because it did not allege the particular laws the defendants conspired to violate (*Schefano v. United States*, 84 F.2d 513 (C.C.A. 5, 1936)).

We are of the opinion that respondent was given reasonable notice of the nature of the charge against him (section 242(b), *supra*). The factual statements relative to his 2 convictions of conspiracy to violate the Internal Revenue laws were of sufficient clarity to enable him to procure witnesses and make a proper defense thereto. Since the doctrine of *res adjudicata* has no application to an administrative proceeding, the Immigration Service is not held to the strict requirement which prevails in criminal proceedings, to wit, that the indictment charge the essential facts so specifically that the judgment rendered will be a complete defense to a second prosecution for the same offense. Cf. *Matter of K——*, 3 I. & N. Dec. 575, 577; *Pearson v. Williams*, 202 U.S. 281, 284 (May 14, 1906).

## II. PROCEEDINGS CONDUCTED IN AN ATMOSPHERE OF PREJUDICE

Counsel urges that the special inquiry officer was prejudiced against the respondent by reason of the voluminous and inflammatory publicity resulting from his appearance before an investigating committee of the United States Senate during June of 1959. It is also alleged that the special inquiry officer allowed the examining officer to examine the respondent in an inflammatory, redundant and illegal manner to the further stimulation of adverse publicity and in derogation of the respondent's right to a hearing in a dispassionate and judicial atmosphere.

We find no merit to the charge that the special inquiry officer and the examining officer conducted the proceeding in an atmosphere

of obvious prejudice against the respondent. The fact that respondent was awaiting trial on an indictment charging bribery of an Indiana State officer at the time of this proceeding does not preclude a fair hearing to the respondent in an immigration proceeding. We find no evidence of record that the special inquiry officer and the examining officer were influenced by this factor. Cf. *Matter of M——*, 5 I. & N. Dec. 261, 262 (B.I.A., June 1, 1953).

### III. ERROR IN ADMITTING THE DOCUMENTARY EVIDENCE

Counsel maintains that the special inquiry officer erred in admitting the documentary evidence relied upon by the Government to sustain the charge that respondent is deportable as a twice convicted alien. She urges that since respondent elected to stand mute during the hearing the documentary evidence violated his privilege against self-incrimination. She also urges that the fingerprint charts (Exhs. 15 through 20) were not properly qualified and that one of them (Exh. 17) had been obtained in violation of the respondent's rights under the Fourth and Fifth Amendments to the Constitution.

It is settled law that deportation proceedings are civil in nature and not criminal (*Carlson* v. *Landon*, 342 U.S. 524 (1952)). Administrative tribunals are not bound by the rules of evidence present in judicial proceedings except those perpetuated in governing regulations. *Schoeps* v. *Carmichael*, 177 F.2d 391, 395 (C.C.A. 9, 1949); *United States ex rel. Impastato* v. *O'Rourke*, 211 F.2d 609 (C.C.A. 8, 1954), and cases cited.

The protection afforded the respondent by the Fourth and Fifth Amendments has not been violated by the introduction of the documentary evidence relied upon by the Government. There is no evidence before us that any of the documents were obtained by an "unreasonable search and seizure" in violation of the Fourth Amendment. The privilege against self-incrimination guaranteed by the Fifth Amendment does not extend to the use of fingerprint records when they serve as a basis for identification (*United States* v. *Kelly*, 55 F.2d 67 (C.C.A. 2, 1932); *Holt* v. *United States*, 218 U.S. 245, 252). We find on this record that the hearing was conducted in accordance with the prescribed regulations (8 CFR 242) and that the introduction of the documentary evidence here under consideration does not constitute a violation of the protection guaranteed the respondent by the Fourth and Fifth Amendments.

### IV. THE QUANTUM OF PROOF

We next turn to the issue of whether as a matter of law the respondent is deportable on the charge that after entry he has been convicted of 2 crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. Counsel maintains that

the Government has failed in its proof against respondent in that there is insufficient evidence to identify him as a co-conspirator in either of the 2 criminal offenses which serve as a basis for the finding of deportability.

We have carefully studied the evidence in its entirety and are satisfied that the testimony of the Government witnesses adequately establishes that the respondent in this proceeding is identical with the person whose fingerprint records were introduced in evidence as exhibits 15 through 20. The documentary evidence, together with the identifying testimony of the witnesses, is in our judgment sufficient to support the special inquiry officer's conclusion that the respondent, as a co-conspirator, was convicted of the 2 offenses described in the judgments of conviction entered as exhibits 11 and 12. The conclusion of the special inquiry officer is supported by rulings of the Supreme Court to the effect that where there is a duty to speak an inference may be drawn from the refusal of an alien to testify on his own behalf in a deportation proceeding and such an inference is evidence. *United States ex rel. Bilokumsky* v. *Tod*, 263 U.S. 149, 153 (1923); *Hyun* v. *Landon*, 219 F.2d 404, 409 (C.C.A. 9, 1955), aff'd 350 U.S. 816; cf. *Matter of V——*, 7 I. & N. Dec. 308 (B.I.A., 1956).

### V. THE ISSUE OF DEPORTABILITY

A preponderance of substantial and probative evidence establishes that the respondent subsequent to entry has been convicted on 2 occasions for conspiracies to violate the Internal Revenue laws of the United States (Exhs. 11 and 12). There is no dispute relative to the finding that the offenses did not arise out of a single scheme of criminal misconduct. Counsel, however, does except to the special inquiry officer's conclusion that the respondent has been convicted of 2 conspiracies which involve moral turpitude.

Counsel contends that as a matter of law the respondent has not been convicted of 2 separate offenses which involve moral turpitude, because the records of conviction charge conspiracy to violate the Internal Revenue laws by the commission of several described substantive offenses and since some of the substantive offenses charged in the indictments do not involve moral turpitude, the lowest grade of the substantive offense necessary to sustain the conspiracy conviction is the one which must be imputed to the conviction record as a whole. Counsel also urges error on the part of the special inquiry officer in relying on the Supreme Court's decision in the case of *Jordan* v. *DeGeorge*, 341 U.S. 223 (1951), as controlling in the instant case. Counsel maintains that the decision in the *DeGeorge* case (*supra*), is not the law of the case in this proceeding, even if it is proven that the respondent was one of the co-conspirators con-

540

victed with DeGeorge as shown by the record of conviction entered as exhibit 12.

We agree with counsel that the Supreme Court's decision with respect to the alien DeGeorge does not establish the law of the case in the instant proceeding. However, it is not an error of law on the part of the special inquiry officer to state in his decision that the conclusion reached by the Supreme Court in the *DeGeorge* case (*supra*), to wit, "that the crime of conspiracy to defraud the United States is a crime involving moral turpitude" is applicable in the instant case. (See p. 7 of the special inquiry officer's opinion.)

As a matter of law, a conspiracy to commit an offense involves moral turpitude only when the offense which is the object of the conspiracy involves moral turpitude (*United States ex rel. Berlandi* v. *Reimer*, 30 F. Supp. 767 (S.D.N.Y., 1939); *Mercer* v. *Lence*, 96 F.2d 122 (C.C.A. 10, 1938), cert. den. 305 U.S. 611). The respondent was charged in the 1938 single-count indictment substantially as follows: That from about October 7, 1937, until the fall of 1938, the defendants conspired together and with other persons unknown to violate the Internal Revenue laws:

(1) By unlawfully, knowingly and willfully defrauding the United States of tax on distilled spirits.[2]

(2) By carrying on the business of a retail and wholesale liquor dealer in such periods without having paid the special tax required by law.[3]

(3) By removing and aiding in the removal of distilled spirits on which the United States Internal Revenue tax had not been paid to a place not a distillery warehouse or a bonded warehouse as required by law.[4]

(4) By concealing and aiding in the concealment of spirits so removed ([4], *supra*).

(5) By possessing 120 gallons of alcohol and other quantities of distilled spirits which did not bear tax stamps.[5]

(6) By carrying on a business of a distillery without the required statutory bond.[6]

(7) By making mash for distillation or for production of spirits in an unauthorized distillery.[7]

The grand jury enumerated 9 overt acts committed by the defendants in furtherance of the conspiracy. The respondent pleaded guilty and was sentenced to 180 days' imprisonment.

---

[2] Sections 2833(a) and 2806(f) of the 1939 Internal Revenue Code define this specification, the pertinent portions of which are set forth in Appendix A.

[3] Section 3253 of the 1939 Internal Revenue Code defines this specification, the pertinent parts of which are set forth in Appendix A.

[4] Sections 2913 and 3321(a) of the 1939 Internal Revenue Code define this specification (see Appendix A).

[5] Sections 3320(a) and 2803(a) of the 1939 Internal Revenue Code define this specification (see Appendix A).

[6] This offense is described in the penalty provision of section 2833(a) of the 1939 Internal Revenue Code (see Appendix A).

[7] Section 2809(a) of the 1939 Internal Revenue Code defines this specification (see Appendix A).

The December 1939 single-count indictment (Exh. 12) charged that from July 15, 1939, to the time of the indictment the respondent conspired with others to violate the Internal Revenue laws of the United States:

(1) By willfully defrauding the United States of tax on distilled spirits (2, supra).

(2) By carrying on the business of a retail and wholesale liquor dealer in distilled spirits without having paid the special tax required by law (3, supra).

(3) By removing and aiding in the removal of distilled spirits on which the Internal Revenue tax had not been paid to a place other than a distillery or bonded wherehouse as required by law (4, supra).

(4) By concealing and aiding in the concealment of such removed spirits (4, supra).

(5) By carrying on the business of a distiller without the required statutory bond (6, supra).

(6) By setting up an unregistered still.[8]

(7) By making mash for distillation or for the production of distilled spirits on premises not duly authorized as a distillery (7, supra).

(8) By possessing and transporting distilled spirits (4,675 gallons of alcohol and other quantities of distilled spirits), which were not stamped to denote the quantity contained therein or evidence of payment of Internal Revenue taxes (5, supra).

The grand jury enumerated 13 overt acts committed by the defendants in furtherance of this conspiracy. The respondent was convicted and sentenced to imprisonment for 2 years.

The respondent was convicted under section 88 of Title 18, United States Code, for two conspiracies to violate the Internal Revenue laws of the United States. Section 88 of Title 18, U.S.C.,[9] creates 2 crimes: (1) conspiracy to commit an offense against the United States, and (2) conspiracy to defraud the United States in any manner or for any purpose.[10]

The Internal Revenue statutes have broken down the various steps and phases of a continuous illicit distilling and distributing business and made each of them separate offenses. Some of the offenses defined by the revenue statutes involve moral turpitude and some do not (10, supra). Both indictments in the instant case charge the respondent with conspiracies "to violate the Internal Revenue laws of the United States by the commission of various offenses against the United States of America" (Exhs. 11 and 12).

The particular revenue statutes the respondent conspired to violate are not designated but the specifications of both indictments when considered in their entirety describe a large scale operation of distilling, possessing, concealing, transporting distilled spirits on

---

[8] Section 2810 of the 1939 Internal Revenue Code defines this specification (see Appendix A).

[9] Section 88 of Title 18, U.S.C., is set forth in Appendix B.

[10] *Matter of G——*, 7 I. & N. Dec. 114 (B.I.A., Feb. 9, 1956).

which the United States Revenue tax had not been paid and carrying on the business of retail and wholesale liquor dealer without having paid the required revenue tax. The specifications also charge the respondent with conspiring to "unlawfully, knowingly and willfully defraud the United States of tax on distilled spirits." [11]

The issue narrows to a determination of whether the conspiracies here under consideration have as their objective the commission of several offenses against the United States or do they by their very nature have as their objective "to defraud the United States in any manner or for any purpose." It is well settled that in an indictment for conspiring to commit several offenses (where the conspiracy is the gist of the crime charged) it is not necessary to allege with technical precision all the elements essential to the commission of the offenses which are the object of the conspiracy.[12] Furthermore, the object of the conspiracy need not be stated with the detail required in an indictment for committing the substantive offense ([12], supra). Certainty as to a common intent, sufficient to identify the object of the conspiracy, is all that is necessary ([12], supra). The separate offenses which comprise the conspiracies here under consideration are primarily revenue statutes and were enacted by Congress to prevent one who comes within their terms from defrauding the Government out of the tax levied upon the product which they manufacture and distribute.[13]

The character and effect of a conspiracy is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.[14] This is precisely what the Supreme Court did in the case of Jordan v. DeGeorge,[15] because in that case referring to the December 1939 indictment the court said, "Less than a year later, he (DeGeorge) returned to his former activities and in December 1939, he was indicted again with eight other defendants for violating the same federal statutes (1937 indictment) * * * He (DeGeorge) was charged with conspiring to 'unlawfully, knowingly and willfully defraud the United States of tax on distilled spirits'." This language is significant because the Supreme Court was referring to the same indictment that we have under consideration (Exh. 12). The language used by the Supreme Court also means that the "same federal statutes" (substantive offenses) are involved in the conspiracy described in exhibit 11.

[11] See Appendix A for the several statutes defining the substantive offenses charged.

[12] *Wong Tai v. United States*, 273 U.S. 77, 81 (1927); *Thornton v. United States*, 271 U.S. 414, 423 (1926); *Williamson v. United States*, 207 U.S. 425, 441 (1908).

[13] *Partson v. United States*, 20 F.2d 127, 129 (C.C.A. 8, 1927); *Gant v. Bottling Co.*, 29 S.E. 2d 488, 490 (Sup. Ct. So. Car., 1944).

[14] *United States v. Patten*, 226 U.S. 525, 544 (1913).

[15] 341 U.S. 223, 224, 225 (1951).

The Supreme Court noted that DeGeorge was a large-scale violator engaged in a sizeable business. They referred to the fact that the December 1939 indictment alone charged DeGeorge with processing 4,675 gallons of alcohol and an undetermined quantity of distilled spirits. The court said, "At the rate of $2.25 a gallon then in effect, the tax on the alcohol alone would have been over $10,000" (see note 5 at 341 U.S. 225).

The respondent herein is charged with possessing a total of 4,795 gallons of alcohol and an undetermined amount of distilled spirits in the 2 indictments returned against him in 1938 and 1939 (Exhs. 11 and 12). Under the circumstances we consider the respondent herein a large-scale operator engaged in a sizeable business of distilling, transporting, concealing and selling alcohol and distilled spirits. The tax on the total amount of alcohol at the rate of $2.25 per gallon amounts to approximately $10,789.

The purpose of section 88 of Title 18, U.S.C. (now section 371 of Title 18), (⁹, *supra*) is to protect the Government of the United States from imposition through conspiracy to cheat and defraud in respect of its rights, privileges, operations and functions, as well as in respect to property such as taxes levied under the revenue laws.[16] The Supreme Court said in the *DeGeorge* case (*supra*), *"Fraud is the touchstone by which this case should be judged."* We can find no distinguishing features in the case before us which would permit a different judgment on our part. There is no doubt in our mind that the character and effect of the several offenses set forth in the indictments here under consideration charge conspiracies to defraud the United States Government by violation of its revenue laws.[17]

Counsel urges that in the *DeGeorge* case (*supra*) the Supreme Court had before it a stipulation that the alien was convicted of conspiracies which included the element of an intent to evade the payment of taxes and that since there was no comparable stipulation in the instant case, then *DeGeorge* is not controlling insofar as the respondent is concerned. There is no evidence of record to support counsel's allegation with regard to the stipulated premise in the *DeGeorge* case. It is crystal clear, however, from a reading of the Supreme Court's decision in the *DeGeorge* case (*supra*) that the Court fully considered the substantive offenses which were the object of the conspiracies. Referring to DeGeorge's 1937 indict-

---

[16] Cf. *United States* v. *Keitel*, 211 U.S. 370, 393 (1908) ; *Heald* v. *United States*, 175 F.2d 878, 880 (C.C.A. 10, 1949) ; *United States* v. *Weinberg*, 129 F. Supp. 514, 523, 524 (U.S.D.C. Pa., 1955), aff'd 226 F.2d 161. 167 (C.C.A. 3, 1955).

[17] It was said in the case of *Fields* v. *United States*, 221 Fed. 242, 245 (C.C.A. 4, 1915), cert. den. 238 U.S. 640, that "fraud upon the Government by violation of its revenue laws is a crime involving moral turpitude."

ment the Court said, "* * * Respondent was indicated under 18 U.S.C. 88 for conspiring with seven other defendants to violate 12 sections of the Internal Revenue Code. The indictment specifically charged him (DeGeorge) with possessing whiskey and alcohol 'with intent to sell it in fraud of law and evade the tax thereon'. He was further accused of removing and concealing liquor 'with intent to defraud the United States of the tax thereon'." Referring to the December 1939 indictment the Court said, "He was charged with conspiring to 'unlawfully, knowingly, and willfully defraud the United States of tax on distilled spirits' " (*supra* [15] at p. 224). The argument that an intent to defraud was stipulated in the *DeGeorge* case finds no support in the Supreme Court's decision.

It may be argued that our decision in the instant case is not supported by the conclusion reached in *Matter of G——*, 7 I. & N. Dec. 114 (B.I.A., Feb. 9, 1956). We find the two cases distinguishable. The indictment in the *G——* case charged in 5 counts, 4 separate violations of the Internal Revenue laws. The fifth count charged a conspiracy to violate the same substantive offenses set forth in the first 4 counts. G—— was convicted on all five counts.

Moral turpitude was not an element of the offenses set forth in the first 4 counts. It was clear from a reading of the fifth count that G—— was indicted for conspiring with others "to commit offenses against the United States." We reasoned that if the substantive offenses set forth in the first 4 counts did not involve moral turpitude the fact that the alien conspired with others to commit the same offenses would not, *per se*, render them turpitudinous.

Here we are confronted with an entirely different situation. The respondent was not indicted for violations of substantive offenses defined by the Internal Revenue laws. The two indictments with which we are concerned represent two conspiracies, charged in single counts and committed on two separate occasions. The several specifications set out in both indictments do not in each instance employ the technical language of the statutes involved. They do not in every instance fully specify each and every element of the substantive offense described in the statutes [18] concerned. However, a composite of all the specifications permit of only one construction, namely, that each indictment charges a conspiracy to defraud the United States Government by avoiding taxes levied under the Internal Revenue laws. We had in mind the precise situation presented by the instant case when we said in *Matter of G——*, *supra*, that "it is hard to conceive of a situation where two or more individuals conspire with each other to 'fail to pay taxes imposed by law on said distilled spirits' and not have an intent to evade said taxes."

[18] See Appendix A for the statutes involved.

There is no application for discretionary relief before us. The findings of fact and conclusion of law entered by the special inquiry officer on August 10, 1959, are hereby affirmed. An appropriate order will be entered.

**Order:** It is directed that the appeal be and the same is hereby dismissed.

## APPENDIX "A"

*Section 2833(a), Internal Revenue Code of 1939—Distilling without giving bond.*

Any person who shall carry on the business of a distiller without having given bond as required by law, or who shall engage in or carry on the business of a distiller with intent to defraud the United States of the tax on the spirits distilled by him, or any part thereof, shall, for every such offense, be fined not less than $100 nor more than $5,000 and imprisoned for not less than thirty days nor more than two years. * * *

*Section 2806(f), Internal Revenue Code of 1939—Tax fraud by Distiller.*

Whenever any person engaged in carrying on the business of a distiller defrauds or attempts to defraud the United States of the tax on the spirits distilled by him, or of any part thereof, he— * * *. [The penalty provides for forfeiture a fine of not less than $500 nor more than $5,000 and imprisonment for not less than six months nor more than three years.]

*Section 3253, Internal Revenue Code of 1939—Penalties and forfeitures for nonpayment of special tax.*

Any person who shall carry on the business of * * * wholesale liquor dealer, retail liquor dealer, wholesale dealer in malt liquors, retail dealer in malt liquors, or manufacture of stills, and willfully fails to pay the special tax as required by law, shall, for every such offense, be fined not less than $100 nor more than $5,000 and be imprisoned for not less than thirty days nor more than two years. * * *

*Section 3321(a), Internal Revenue Code of 1939—Removal or concealment with intent to defraud the revenue.*

Every person who removes, deposits, or conceals, or is concerned in removing, depositing, or concealing any goods or commodities for or in respect whereof any tax is or shall be imposed, with intent to defraud the United States of such tax or any part thereof, shall be liable to a fine of not more than $5,000 or be imprisoned for not more than three years, or both.

546

*Section 2913, Internal Revenue Code of 1939—Penalty for unlawful removal or concealment of spirits.*

Whenever any person removes, or aids or abets in the removal of, any distilled spirits on which the tax has not been paid, to a place other than the Internal Revenue bonded warehouse provided by law, or conceals or aids in the concealment of any spirits so removed, or removes, or aids or abets in the removal of, any distilled spirits from any such warehouse authorized by law, in any manner other than is provided by law, or conceals or aids in the concealment of any spirits so removed, he shall be liable to a penalty of double the tax imposed on such distilled spirits so removed or concealed, and shall be fined not less than $200 nor more than $5,000, and imprisoned not less than three months nor more than three years.

*Section 3320(a), Internal Revenue Code of 1939—Possession with intent to sell in fraud of law or to evade tax.*

Every person who shall have in his custody or possession any goods, wares, merchandise, articles, or objects on which taxes are imposed by law, for the purpose of selling the same in fraud of the Internal Revnue laws, or with design to avoid payment of the taxes imposed thereon, shall be liable to a penalty of $500 or not less than double the amount of taxes fraudulently attempted to be evaded.

*Section 2803(a), Internal Revenue Code of 1939—Stamps for containers of distilled spirits.*

No person shall transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof has affixed thereto a stamp denoting the quantity of distilled spirits contained therein and evidencing payment of all Internal Revenue taxes imposed on such spirits. * * *

*Section 2809(a), Internal Revenue Code of 1939—Definitions.*

Every person who produces distilled spirits, or who brews or makes mash, wort, or wash, fit for distillation or for the production of spirits, or who, by any process of evaporation, separates alcoholic spirit from any fermented substance, or who, making or keeping mash, wort, or wash, has also in his possession or use a still, shall be regarded as a distiller.

*Section 2810, Internal Revenue Code of 1939—Registry of stills.*

Every person having in his possession or custody, or under his control, any still or distilling apparatus set up, shall register the same with the collector of the district in which it is, by subscribing and filing with him duplicate statements, in writing, setting forth the particular place where such still or distilling apparatus is set up, the kind of still and its cubic contents, the owner thereof,

his place of residence, and the purpose for which said still or distilling apparatus has been or is intended to be used; one of which statements shall be retained and preserved by the collector, and the other transmitted by him to the Commissioner. Stills and distilling apparatus shall be registered immediately upon their being set up.

*        *        *        *        *        *        *

And every person having in his possession or custody, or under his control, any still or distilling apparatus set up which is not so registered, shall pay a penalty of $500, and shall be fined not less than $100, nor more than $1,000, and imprisoned for not less than one month, nor more than two years. * * *

### APPENDIX "B"

*Section 88, Title 18, U.S.C. (now section 371 of Title 18)—Conspiracy to commit offense against United States.*

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both.