## EVANS v. UNITED STATES.

### No. 1992.

Circuit Court of Appeals, Tenth Circuit.

Aug. 22, 1941.

David Allen, of Denver, Colo. (James B. Kelsey and John H. Murray, both of Leavenworth, Kan., and Joseph J. Wolf, of San Francisco, Cal., on the brief), for appellant.

Summerfield S. Alexander, U. S. Atty., of Topeka, Kan. (Homer Davis, Asst. U. S. Atty., of Topeka, Kan., on the brief), for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and FRANKLIN E. KEN-NAMER, District Judge.

FRANKLIN E. KENNAMER, District Judge.

This appeal is from a conviction in the court below of the appellant, Everett Ault Evans, alias Everett A. Troglin, alias Dutch Evans, of the crime of murder in the first degree for the killing of Herbert Otis Hayes within the United States Penitentiary at Leavenworth, Kansas.

It was charged that appellant committed an assault on Hayes about 10:30 A. M. on May 23, 1938, which resulted in the death of the latter shortly before 10 A. M. of May 25, 1938. Both appellant and the deceased, Hayes, were, at the time, convicts serving sentences in the Penitentiary.

In the morning of May 23, 1938, appellant and four other inmates of the prison were in what is called the "sole room"— a room in the prison shoe factory where shoe soles were stacked in racks and the air kept moist with water sprayers. The deceased, Hayes, who bore the nick-name of "King Kong," came into the "sole room" bringing shoe soles to be placed on the racks, and appellant, who was sitting on one of the racks or shelves, looped a string about the head and neck of Hayes and gave it a jerk which caused Hayes to fall to the floor and become unconscious. It was claimed by the Government that while Hayes was on the floor and in an unconscious state, appellant inserted the handle of a broom with considerable force into the anal canal of Hayes, upward into the rectum for a distance of about seven or eight inches from the external rectum, lacerating the intestine and puncturing the sigmoid flexure or colon at the juncture of the sigmoid and rectum, from which inflicted wounds peritonitis developed and caused the death of Hayes about two days later. The episode of looping the string about Hayes and his falling to the floor and becoming unconscious from the fall was admitted by the testimony of appellant,

he testifying that he was merely "playing" with Hayes and had no intention of injuring him. Although having previously made statements, both written and oral, to the contrary, at the trial appellant denied the use of the broom handle on Hayes in any manner. His such denial was corroborated by the testimony of three other convicts who were in the "sole room" at the time Hayes was injured. About 10:30 A. M. of May 23, Hayes applied to the first aid attendant in the prison shoe factory for some headache tablets. At that time, this attendant testified that Hayes was holding a hand to his side and leaned against a seat, and there was a bruise over one of Hayes' eyes and lacerations on both sides of his neck. Hayes also returned to this attendant during the afternoon of the same day and was given some headache tablets. Early in the evening of that day Hayes was taken to the Penitentiary hospital, and there the physicians diagnosed his condition as appendicitis requiring an immediate surgical operation. Accordingly, an operation was performed which was completed about 11:48 P. M. After opening the abdomen, according to the medical testimony, the appendix was found to be intact and not undergoing any active disease. The surgeon then elongated the incision he had made and further examined the abdominal cavity and its viscera. This disclosed a ruptured sigmoid from which and its surroundings emanated a considerable quantity of fresh fecal matter and some bloody inflammatory fluid. Without narrating further the details of this operation which were related at great length by the medical witnesses, it was found, to use the language of Doctor O'Kane, testifying for the Government, that Hayes was suffering from "generalized peritonitis," which meant "that the entire abdominal cavity or the intestine, the viscera, were bathed in this fecal, greenish fluid, purulent pus." In the opinion of the attending physicians, this peritonitis caused the death of Hayes. This operation and an autopsy shortly after Hayes died revealed, in addition to the ruptured sigmoid, injuries in the form of abrasions and tears in the anal and rectal canals up to the point of the rupture or puncture of the sigmoid, indicating that some blunt instrument had been inserted into the anus and forced upward some seven or eight inches, and that all these wounds had the appearance of having been freshly made. A portion of the viscera was admitted in evidence to dem-

onstrate the position and character of the wounds. In the opinion of the medical witnesses, the peritonitis causing the death of Hayes was incited by the infliction of the above-mentioned wounds. About 8:30 o'clock on the morning of May 24, two officials of the Penitentiary made a search of the "sole room" and there found a broom. At this time the part of the broom where the straw joined the handle was very wet, and the upper part of the handle was wet and had the appearance of having been recently cleaned and sand papered. Sand paper and emery paper were kept in the shoe factory for the use of the convicts in their work. Appellant made a written statement concerning the occurrences leading to the death of Hayes to Associate Warden Shuttleworth on May 23 and another on May 24. He also made a written statement to L. B. Reed, Special Agent of the Federal Bureau of Investigation, at the Penitentiary, on June 27, 1938. In the second of the statements made to Shuttleworth, appellant admitted the incident of the string and the falling of Hayes to the floor and being revived from an apparent faint by wet hands placed on his face, but in neither of the Shuttleworth statements did appellant mention a broom. In his written statement made to Investigator Reed, appellant, among other things, said:

"While Hayes was on the floor I picked up a broom that was in the sole room and poked it up his (Hayes) trouser leg, in an effort to poke him and bring him back to consciousness."

In addition to the mentioned written statements, appellant made several oral statements to the officers. At the time Investigator Reed took the written statement, according to his testimony, the appellant made the further statement to him orally, which the appellant did not want incorporated into the writing, that he had used the broom handle on Hayes, and when asked by the investigator in what manner, appellant replied, "I jabbed it up his" anus. The appellant testified that he made no such statement. Hereinabove, we have attempted to briefly narrate the most material circumstances of this tragedy as disclosed by the record, but we will hereinafter make further necessary reference to the evidence at the trial.

Appellant contends that the evidence is insufficient to support the verdict. Hereunder, and making major argument thereon, appellant claims that the evidence failed to establish the corpus delicti. It is insisted that apart from the extrajudicial confession or admissions of appellant admitted in evidence, there was no evidence to prove the body of the crime. It is the law that unless corroborated by independent evidence of the corpus delicti, the extrajudicial confession or declarations of a defendant charged with crime are not sufficient to authorize a conviction. Gulotta v. United States, 8 Cir., 113 F.2d 683; Gregg v. United States, 8 Cir., 113 F.2d 687; Martin v. United States, 8 Cir., 264 F. 950; Naftzger v. United States, 8 Cir., 200 F. 494. But the independent evidence, however, need not be of itself sufficient proof of guilt, but need only be a sufficient showing which together with the defendant's confession or admission establishes the crime beyond a reasonable doubt. Gulotta v. United States, supra; Gregg v. United States, supra; Naftzger v. United States, supra; Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120; 20 Am.Jur., §§ 1230–1233. The corpus delicti may be proved by circumstantial evidence. 20 Am.Jur., § 1231; Perovich v. United States, 205 U.S. 86, 27 S.Ct. 456, 57 L.Ed. 722; St. Clair v. United States, 154 U.S. 134, 14 S.Ct. 1002, 38 L.Ed. 936. It is stated in Murray v. United States, 53 App.D.C. 119, 288 F. 1008, 1016, that:

"The corpus delicti, as relates to homicide, is composed of two elements: (a) The death of the person alleged to have been killed; (b) that some criminal agency caused such death. * * * Of course, both of these elements must be established beyond a reasonable doubt. When the jury find these established, the next inquiry is as to the identity of the criminal agency; and this, too, must be established beyond a reasonable doubt, but is properly no part of the corpus delicti."

In our judgment, this case correctly defines the constituent elements of corpus delicti. Wharton, however, gives a somewhat different definition.

"The corpus delicti in homicide consists of the criminal act and the resulting death, and the agency of the accused in its commission." Wharton, The Law of Homicide, 3rd Ed., § 587.

Accepting either of the above definitions, there was ample proof in the instant case of the body of the crime independent of the admissions of the appellant. The death of Hayes, of course, is undisputed, and the

medical testimony is very clear that it resulted from peritonitis activated by the wounds inflicted by the forcible insertion of some blunt instrument—such as the broom handle in evidence—seven or eight inches upward into his rectum. The use of the string by appellant and the falling of Hayes to the floor and his resultant unconsciousness is undisputed. After his injury, Hayes applied for medical assistance, at the time bearing marks of a bruise over his eye and lacerations about his neck, and holding a hand to his side and leaning up against a seat. This was indicative of some internal suffering. Early the next morning, a broom was found in the "sole room," and the handle of this broom appeared to have been freshly cleansed and sand papered, and parts of the broom were very wet. The handle of this broom was such character of an instrument as was capable of inflicting the wounds which caused the death of Hayes. The cleansing and sand papering, evidencing an attempted concealment of its brutal use, was a strong circumstance tending to establish that it was the instrument used to perpetrate the crime. Hayes was taken to the hospital early in the evening of the day of the assault. The surgical operation and the autopsy which followed definitely revealed the injuries to the rectum and sigmoid, and the character of these injuries was a circumstance of great weight. All of the above related facts were in evidence by other witnesses, entirely independent of any admission of the appellant. Hence, we conclude that there was sufficient evidence to establish the corpus delicti, even if the admissions of the appellant be wholly disregarded in that connection.

It is further contended that the evidence did not show malice and premeditation to warrant a verdict of guilty of murder in the first degree. It is stated in Wharton on The Law of Homicide, 3rd. Ed., § 96, as follows: "If the act which produces death was attended with such circumstances as are the ordinary symptoms of a wicked, depraved, and malignant spirit, the law will imply malice without reference to what was passing in the mind of the slayer at the time of the fatal act."

The fact that cruelty or brutality is manifested in the killing will raise an inference of malice. 29 C.J. 1099, § 73. The length of time of premeditation is not material, and the circumstances of the act committed by the appellant show premeditation. Suhay v. United States, 10 Cir., 95 F.2d 890. Consequently, there is no merit in this contention of appellant.

Appellant urges error in the admission in evidence of the written statement of appellant made to Investigator Reed. From the record, it appears that the statement was made voluntarily and without duress or coercion. It was clearly admissible. Further, appellant says it was reversible error to permit the introduction in evidence of certain articles of demonstrative evidence, namely, the string used by appellant in causing the deceased to fall to the floor; the broom, and the viscera of deceased consisting of the sigmoid flexure or colon. As to the string and broom, 22 C.J.S., Criminal Law, p. 931, § 611, states the rule to be:

"Evidence is relevant to show that the accused owned, possessed, or had access to any articles with which the crime was or might have been committed."

It is true the broom was somewhat different in condition at the time of its introduction in evidence than when found in the "sole room" by the Penitentiary officials, but this difference existed only in change of coloring and that at the trial there was no dampness about the broom as would be naturally caused by the lapse of time. It was properly identified and had been in the custody of the Warden of the prison since it was found. Likewise the viscera was properly admissible to show the nature of the wounds inflicted on the deceased, and their locations. 22 C.J.S., Criminal Law, p. 1226, § 716 c; State v. Byrne, 60 Mont. 317, 199 P. 262; State v. Rodriguez, 23 N.M. 156, 167 P. 426, L. R.A.1918A, 1016; People v. Coltrin, 5 Cal.2d 649, 55 P.2d 1161; State v. Sweet, 101 Kan. 746, 168 P. 1112.

It is also urged that the trial court erred in permitting Agent Reed, of the Federal Bureau of Investigation, to give evidence qualifying the written statement of appellant made to him. When this witness was first on the stand, he identified the statement and related that it was written after an oral statement had been made by appellant, and further said appellant told him that "he poked the man with a broomstick in an effort to bring him to; that the man was unconscious." Later, being recalled as a witness and after refreshing his memory from a report of his

investigation written the next day after the interview with appellant, Reed testified that appellant told him, referring to the broomstick, "I jabbed it up his" anus. Witness was testifying almost eleven months after he had taken the statements from appellant, during which period he had investigated many crimes. It was not to his discredit that he could not recall all the details of his interview with appellant without reference to written memoranda, and if the oral statements of appellant qualified the written statement, they were none the less competent, if voluntary, and the record shows nothing to indicate otherwise.

■ An assignment of error is argued that the court refused to admit testimony of the general reputation of the deceased as a moral pervert. The record shows that a Government witness was asked on cross-examination if the deceased did not have a reputation as a moral pervert. Obviously, this was not proper cross-examination. No attempt was made by the defense testimony to establish such a reputation for accused. We find no merit in this contention of appellant. His defense was that he did not commit the crime, and it is questionable if the reputation of deceased as a pervert was at all admissible, but if it was, it was a defensive matter.

■ Appellant also claims error in the admission of testimony to impeach one McIlvain, a witness for defendant, without sufficient foundation being laid therefor. In his direct examination this witness related certain acts which took place in the "sole room" and afterwards and also certain conversations with appellant. On cross-examination he was asked as to whether or not he told certain Penitentiary officers that appellant had made statements contrary to the statements related by witness in his direct examination. In rebuttal, the Government called these officers to testify that the witness had made different statements to them. 70 C.J. 799, 800. There was no error in this.

■ At the close of the instructions to the jury, the trial court inquired if the accused had any changes to suggest or any exceptions, and counsel for accused stated "The defendant suggests no changes." However, appellant invokes the rule that this court may notice a plain and serious error though unassigned, contending that

the trial court failed to instruct on the presumption of innocence, and further that the instructions of the court submitted to the jury only the possibility of death having been caused by some person other than the deceased, and left no room for an inference that an act of the deceased himself could have caused his death. The rule as to unassigned error as stated by appellant is not questioned. However, as to the failure of the trial court to give an instruction as to the presumption of innocence, it is clearly the law that this is not error unless the accused specifically request such an instruction. Raffour v. United States, 9 Cir., 284 F. 720; Sylvia v. United States, 6 Cir., 264 F. 593. Compare the holdings of this court in Troutman v. United States, 10 Cir., 100 F.2d 628; Kitrell v. United States, 10 Cir., 79 F.2d 259; Hall v. United States, 10 Cir., 78 F.2d 168; Hoffman v. United States, 10 Cir., 68 F.2d 101; Aldridge v. United States, 10 Cir., 67 F.2d 956, and Addis v. United States, 10 Cir., 62 F. 2d 329. Moreover, the trial court, as a part of the charge to the jury, instructed: "The burden of proof rests upon the Government to prove his guilt and not upon the defendant to prove his innocence." The cases of Cochran v. United States, 157 U.S. 286, 15 S.Ct. 628, 39 L.Ed. 704, and Coffin v. United States, 156 U.S. 432, 15 S. Ct. 394, 39 L.Ed. 481, relied upon by appellant are not in point, as in each of these cases there was a timely request for an instruction as to the presumption of innocence and a denial by the trial court of such request. We cannot agree with appellant that the instructions of the trial court eliminated from the consideration of the jury the possibility of suicide. That issue, of course, was not tendered as a defense, but the portion of the instruction complained of in this respect contained this language:

"For instance, in this case we have some evidence that the defendant stated to some of the officers that he used this broomstick, and on the other hand, you have his absolute denial that he did use the broomstick or any other blunt instrument, but you have the circumstance that (sic) testified here that the deceased, the dead man, suffered certain injuries that could not have been received except in a manner such as described; that it, *some person or some instrument must have caused the injury.*" (The italics are ours.)

There was no evidence pointing to suicide, but under the instruction given there was nothing to prevent the jury from considering the possibility of such. As destructive of appellant's argument on this point, it may also be remarked that there was no request for an instruction on the theory of self inflicted wounds. We conclude, therefore, there is no showing in the instructions of the trial court of any serious error, resulting in grave injustice to accused or in a clearly erroneous judgment, such as would warrant a reversal. Addis v. United States, supra.

 It is further assigned as error that the trial court in considering a motion for a new trial which was overruled received evidence dehors the record in a report made to the court by a probation officer. On May 15, 1939 (three days after verdict) a motion for new trial was filed, and this was overruled by the trial court on June 28, 1939. On the same date, while appellant was before the court, and after statements were made by him, his counsel, and counsel for the Government, the court ordered sentence deferred pending an investigation by the probation officer. On July 3, 1939 a second motion for new trial was filed, which was overruled August 1, 1939, the day on which the report of the probation officer was filed. Apparently, the trial judge was simply following the common practice in Federal district courts of having cases investigated before pronouncing sentence in order that rights of the accused may be better safeguarded at the time of sentence. We perceive no error in this action of the trial court. Furthermore, ordinarily the action of the trial court in passing on a motion for new trial is not reviewable by the appellate court. Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861, 19 Ann.Cas. 778; Benetti v. United States, 9 Cir., 97 F.2d 263; Cooper v. United States, 4 Cir., 247 F. 45; Lewis v. United States, 8 Cir., 14 F.2d 111; Clark v. United States, 9 Cir., 245 F. 112.

 We have before us a motion of appellant to remand this case to the trial court in order that a motion for a new trial on the ground of newly discovered evidence may be there entertained. By mandate of the Supreme Court in Evans v. United States, 311 U.S. 635, 61 S.Ct. 69, 85 L.Ed. ——; Id., 312 U.S. 651, 61 S.Ct. 548, 85 L.Ed. ——, we were directed to reconsider this motion when the transcript of the evidence should come before us. Hence it is timely and necessary that we now determine same. The motion is supported only by the affidavit of Harry Peck Murrey, made June 25, 1940, in the United States Penitentiary at Alcatraz Island, California, where at the time, both Murrey and appellant were confined as convicts. Affiant states he was an inmate of the Penitentiary at Leavenworth when the death of Hayes occurred, and that on the evening of the day of the alleged assault on Hayes, affiant went to the cell of Hayes to get some thread and borrow a guitar; that when he came to the cell, he saw Hayes seated upon a toilet abusing himself in the rectum with a toilet plunger; that Hayes fell off the toilet seat, and when he arose from the fall he was pale in the face and the plunger was still up his rectum; that Hayes then removed the stick from his rectum, remarking that he frequently did that to make his bowels move; that affiant said nothing about this incident prior to the trial because of fear of being isolated by prison officials, or otherwise punished. The appellee has presented an application for permission to file affidavits in opposition to the motion to remand, and has attached to the application the affidavits proposed for filing. The appellant has made written objection to the filing and consideration of these counter affidavits. We think the objections have no tenable ground, and the affidavits tendered by the Government should be filed. As stated in Wagner v. United States, 9 Cir., 118 F.2d 801, 802:

"Rule 2(3), Criminal Practice and Procedure 18 U.S.C.A. following section 688, provides for remanding to the trial court for its consideration of a motion for new trial in certain circumstances. We have no power to entertain a motion for a new trial, hence we consider only whether, in the exercise of our discretion, we should remand the case."

Concerning newly discovered evidence as a ground for new trial, it is said in 23 C.J.S. Criminal Law, p. 1253, § 1461, as follows: "Generally newly discovered evidence is not ground for a new trial unless it is credible and probably would change the result."

Johnson v. United States, 8 Cir., 32 F.2d 127, 130 enumerates the legal grounds for sustaining a motion for new trial as the

following: "There must ordinarily be present and concur five verities, to wit: (a) The evidence must be in fact, newly discovered, i. e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on, must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. 12 Cyc. 734, and cases cited."

Judge Parker, of the Fourth Circuit, referring to a similar situation, in Isgrig v. United States, 109 F.2d 131, 134, as to the duty of the court, says: "The case will be remanded, however, only if showing is made to the appellate court that the lower court would be justified in granting the new trial. Cf. Horne v. United States, 4 Cir., 51 F.2d 66, 67."

Considering the affidavit of Murrey alone, and without reference to the counter affidavits presented by the Government, in view of the above authorities we are of the opinion that the lower court would not be justified in granting a new trial on Murrey's testimony should it be of the nature disclosed by his affidavit. His statement is of very doubtful credibility. He was a fellow prisoner with appellant at Leavenworth and again at Alcatraz and did not disclose his information to appellant until March 1, 1940. The statement has too much of the appearance of a last effort scheme evolved by himself and appellant in order that appellant may escape punishment for his crime, and is certainly not of that character of testimony which, if placed in evidence on a new trial, would probably produce an acquittal. See Goodman v. United States, 3 Cir., 97 F.2d 197.

The unusual circumstances of this case, as well as the gravity of the crime charged and the punishment imposed, have commanded a careful scrutiny of the record and a close study of the legal points involved, as to both the motion to remand and the appeal proper. From such consideration, we conclude the appellant has had a fair and impartial trial, without prejudicial error committed, and there is no sound reason for either sustaining the motion to remand or reversing the cause.

Accordingly, the motion to remand is denied, and the case is affirmed.