UNITED STATES of America,
Appellee,

v.

John MENTESANA, Appellant.

No. 382, Docket 27527.

United States Court of Appeals
Second Circuit.

Argued June 6, 1962.

Decided July 9, 1962.

Joseph P. Hoey, U. S. Atty., E. D. New York (Jerome C. Ditore, Asst. U. S. Atty., of counsel), for appellee.

Jacques M. Schiffer, New York City (Abraham W. Sereysky, New York City, of counsel), for appellant.

Before CLARK, WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

Appellant was charged in a seven-count indictment with having passed on April 11 and 12, 1961, with intent to defraud, over 25,000 counterfeit U. S. Treasury bearer coupons purporting to be coupons from certain U. S. Treasury notes.[1] Two others were jointly indicted with him, one Gersh who presented the counterfeit coupons to a bank which paid some $192,-000 therefor, and one Blaustein, an employee of the defrauded bank. Prior to trial Gersh pleaded guilty to three of the seven counts, 3, 4 and 7, with an understanding that the remaining four would not be pressed as to him. During trial Blaustein changed his not guilty plea and pleaded guilty to three of the seven counts, counts 3, 5 and 6, with a similar understanding. Mentesana stood

1. In counts one and two the three defendants were charged with passing the counterfeit coupons, knowing them to be counterfeit, in violation of 18 U.S.C. §. 472; counts three and four charged that Blaustein, abetted by the other two, misapplied the bank's funds in violation of 18 U.S.C. § 656; counts five and six charged that Mentesana and Gersh induced Blaustein to cash the counterfeit coupons in violation of 18 U.S.C. § 220; and count seven charged that the three defendants conspired in violation of 18 U.S.C. § 371 to violate 18 U.S.C. § 656.

trial and after the court had dismissed counts 5 and 6 a jury found him guilty on the five remaining counts, 1, 2, 3, 4 and 7. From the judgment of conviction upon this verdict Mentesana appeals on two grounds, first that the evidence presented at trial was insufficient to warrant conviction, and second that the jury was confused because the court first charged:

"Now, * * * I read Counts 1, 2, 3 and 4, and 7, and I am going to instruct you that in order to convict the defendant under any one or more of those Counts, it is not necessary for the Government to prove that Mr. Mentesana had knowledge that the coupons passed at the Meadowbrook National Bank were actually counterfeit."

And then later said:

"In the first place, I want to correct an error I made. I charged you that in order to convict the defendant on the Counts 1, 2, 3, 4 and 7, it is not necessary for the Government to prove that the defendant had knowledge that the coupons passed at the Meadowbrook National Bank were counterfeit. That is true with respect to Counts 3, 4 and 7, but it is not true with respect to Counts 1 and 2, because the Government has to establish that Mr. Mentesana knew that they were counterfeit at the time of the passing of the particular coupons."

■ Gersh testified for the Government. He testified that he received the counterfeit coupons from Mentesana and that after money had been obtained for them from the bank he and Mentesana had repaired to the apartment of Mentesana's daughter and had divided the money according to pre-arranged percentages. His testimony on direct examination was convincing and was meticulous in detail. It was unshaken on cross-examination.

Though Mentesana took the stand in his own defense his daughter did not testify. One De Santis also testified for the Government. His testimony was that a few months prior to April 11, 1961, upon being approached by appellant, he had purchased from him ten thousand dollars' worth of counterfeit twenty-dollar bills for fifteen hundred dollars. Two U. S. Secret Service men testified to having purchased counterfeit twenty-dollars bills from De Santis, and, without objection, bills so purchased were put in evidence.

The court painstakingly charged the jury that the testimony of Gersh, being the testimony of an admitted accomplice, should be scrutinized very carefully; and that the testimony of De Santis, if believed, did not show that appellant had committed the crimes for which he was then standing trial but that the De Santis testimony was only offered for the purpose of showing that there could be a likelihood that Mentesana had an intent to pass counterfeit Treasury coupons because he had dealt with counterfeit money.

■ Under all the circumstances we hold that the submission to the jury of the question of appellant's guilt was not erroneous. Nor was the case improperly or confusedly submitted. The court's explanation of the change he was making in his charge was a most lucid one and was the first statement made to the jury upon its return to the box after a recess prefaced by the following:

"The Court: * * * Now, ladies and gentlemen, I have a few final instructions to give you.

"I am going to excuse you for a few moments so I can confer with counsel.

"I will call you back for a final instruction in about five minutes or less."

Nor did the appellant object to the charge as given.

■ Appellant also appeals from the denial of a motion for a new trial. While his appeal from his conviction was pending, the case, upon appellant's application, was remanded to

the district court so that the trial judge could entertain appellant's motion for a new trial on the ground that newly-discovered evidence was of such importance that knowledge of it at the time of the trial may well have affected the verdict and might have resulted in an acquittal. The "newly-discovered evidence" was alleged to be this: When De Santis testified at the trial he lied when he testified that he had had no dealings in counterfeit currency prior to the early fall of 1960 and knew no secret service agents prior to that time. It was also stated that as this testimony was untrue, and appellant was unaware of its untruthfulness when the case was tried, appellant should be given another opportunity to demonstrate that De Santis, who had admitted on the stand that he had dealt in counterfeit money, was a witness whose testimony was unworthy of belief.

The court granted appellant writs of *habeas corpus ad testificandum* so that three men in custody could testify in support of the petition, but when counsel informed the court that appellant's own proposed testimony would not be dissimilar to that of the other three a request that appellant himself be ordered produced was denied. The court also denied appellant's request for a subpoena *duces tecum* directed to employees of the U. S. Secret Service and U. S. Postal Service. After the hearing the judge below filed a written opinion denying the motion, and pointing out that nothing was brought out at the hearing that could have affected the verdict at the trial. Appellant maintains on appeal from this order, however, that he was denied due process when the court disallowed his requests that he and the government employees and their records be produced at the hearing. The witness De Santis had been exhaustively cross-examined at trial by Mentesana's counsel, an attorney who had represented—until the Mentesana trial began—De Santis in a pending prosecution against him. The grounds alleged in support of a new trial for Mentesana involved at best a relatively remote collateral issue to the issue in that trial, that of Mentesana's guilt, to wit, the credibility of a witness admittedly a dealer in counterfeit paper. In view of the frivolousness of the petition, a frivolousness so apparent to the experienced trial judge who had presided at the jury trial, we find no abuse of judicial power in the rulings denying the requested habeas writ and requested subpoena.

The judgment of conviction and the denial of the motion for a new trial are affirmed.