Napoleon Persone **ZAMORA**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 8750.

United States Court of Appeals Tenth Circuit.

Dec. 1, 1966.

Certiorari Denied Feb. 27, 1967.

See 87 S.Ct. 863.

Arthur H. Coleman, Albuquerque, N. M. (Harry L. Bigbee and Arthur H. Coleman, Bigbee & Byrd, Santa Fe, N. M., on the brief), for appellant.

John A. Babington, Asst. U. S. Atty. (John Quinn, U. S. Atty., John A. Babington, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for appellee.

Before JONES *, LEWIS and BREITENSTEIN, Circuit Judges.

JONES, Circuit Judge.

Napoleon Persone Zamora, the appellant, seeks a reversal of his conviction and sentence upon a jury verdict of guilty on each of eight counts of an indictment charging the making of false entries in the records of a bank insured by the Federal Deposit Insurance Corporation in violation of 18 U.S.C.A. § 1005, and on each of three counts of the indictment charging embezzlement of stated amounts from an insured bank by an officer of the bank in violation of 18 U.S.C.A. § 656.

The executive vice president of the First National Bank of Santa Rosa, New Mexico, R. W. Eastland, on April 5, 1965, discovered that some false entries had been made in the bank's records. On the following day he discovered that a change in a record had been made that morning. The Federal Bureau of Investigation was called in. On April 8th three F.B.I. agents were at the bank when Zamora returned from lunch shortly after two o'clock. Zamora had been employed by the bank for nineteen years and was then cashier of the bank. Zamora was asked to go into the bank lounge and there met the F.B.I. agents. Agent Carlton, who was taking the lead at the time, introduced himself and the other agents. He told Zamora that they were investigating a report of irregularities at the bank. Zamora was informed that he did not have to say anything, and that whatever he might say could be used against him. He was told that he could consult a lawyer or anyone else and that no promises would be made and no threats or duress would be used. Zamora consented to answer questions. At the outset Zamora denied having any knowledge of irregularities, but later admitted his embezzlement of bank funds, specified the amount of the total shortage, asserted that no one else was involved, and related the method

---

* Of the Fifth Circuit, sitting by designation.

used to conceal the frauds. The interview lasted less than an hour. The agents went with Zamora to his home where he talked with his wife and made a telephone call to his brother. As he was leaving the bank Zamora said to Eastland, "Walt, I'm sorry. I'm awfully sorry. This is awful. Would you look after my family." The agents took Zamora to the nearest United States Commissioner who was located at Tucumcari, New Mexico, fifty to sixty miles away. About six o'clock a complaint was filed and Zamora made a formal appearance before the Commissioner. The Commissioner asked if he had an attorney. Zamora replied, "No I don't, I don't want one. I have done everything I can do to anybody." The Commissioner, who had known Zamora for a long time, took him into his office and told him he needed a good lawyer. Zamora telephoned his wife from the Commissioner's office. Statements in the nature of confessions had been written by the F.B.I. agents. These were read by Zamora and were read to him, and then were signed by him.

Zamora was indicted on eleven counts, of which eight counts charged false entries in the records of an F.D.I.C. insured bank, and three counts charged embezzlement from the bank. He was found guilty on all counts and given sentences which aggregate twenty years. He has appealed from the conviction and sentence.

■ Zamora urges, on several grounds, that the admission of his confession was error. He asserts that the evidence shows that the confession was not freely and voluntarily made. To support this position he points to testimony that he appeared to be dejected, upset, worried, surprised, depressed, and in a state of shock. The witness who used the term "state of shock" regarded it as synonymous with "depressed." None of the evidence, however, indicated the absence of a rational intellect, or any mental condition except that which would naturally follow detection of criminal offenses over a twelve year period involving over $250,000. The evidence falls far short of showing facts from which it could be inferred that the mental condition of the appellant was such as caused his confession to be involuntary, nor was anything else shown which would indicate that the confession was not freely and voluntarily made.

■ It is claimed by Zamora that his confessions were elicited and taken in violation of his right to counsel. It is conceded, as it must be, that before he was interviewed he was informed that he did not have to make a statement, that anything he might say could be used against him, and that he had a right to confer with an attorney or with anyone else. When he was before the United States Commissioner he was again informed of his right to counsel. His complaint seems to be that he was not warned more often, told that he could confer with counsel in private, and that he was not advised as to the punishment to which he might be subjected. The applicable constitutional tests were met. In Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, it was held that a person in custody must, prior to interrogation, be clearly informed that he has a right to remain silent and that anything he says may be used against him in court; he must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation, and that if he is indigent a lawyer will be appointed to represent him. The requirements that the person be informed of the right to have his lawyer with him and that a lawyer would be appointed for him, if indigent, are guidelines which had not been announced prior to the Miranda decision. These guidelines are not to be applied to a case where, as here, the trial was commenced prior to the Miranda decision. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. The Miranda decision was announced on June 13, 1966. The Zamora trial commenced on August 10, 1965, and ended on August 13, 1965. On August 27, 1965, a Motion for Ac-

quittal or for a New Trial was argued and on September 3, 1965, sentence was imposed. The confessions were not to be excluded because of failure to inform Zamora of his rights. We are cited to no authority which requires a person to be informed of the possible penalties of offenses which the questioner may believe have been committed.

■ The questioning commenced at 2:18 P.M. on the afternoon of April 8, 1965. It terminated about an hour later. Zamora went home and talked with his wife. He telephoned his brother. Zamora and the agents returned to the bank. An F.B.I. agent telephoned the United States Commissioner at Tucumcari, New Mexico. About four o'clock, perhaps a little earlier, Zamora and the agents started from Santa Rosa by automobile and arrived at the Commissioner's office in Tucumcari at 5:20. A complaint was prepared and at 5:26 the arraignment of Zamora commenced. It is urged that the confessions were inadmissible because there was an undue delay in taking Zamora before a commissioner. The duty of the officers is to take a person arrested before a commissioner without unnecessary delay. Rule 5(a) Fed.Rules Crim.Proc., 18 U.S. C.A. This Court, in an opinion stating the governing principles of law with a full discussion of the controlling precedents, has set forth fully and adequately the rules which control the decision on this point in this appeal. Walton v. United States, 10th Cir. 1964, 334 F.2d 343, cert. den. 379 U.S. 991, 85 S.Ct. 706, 707, 13 L.Ed.2d 612. Applying those rules, it is clear that there was no unnecessary delay shown and the time lapse between the questioning and confession and the arraignment did not render the confessions inadmissible. See also Haier v. United States, 10th Cir. 1966, 357 F.2d 336; Stille v. United States, 10th Cir. 1965, 354 F.2d 233; Shultz v. United States, 10th Cir. 1965, 351 F.2d 287.

This Court is asked to hold that the written confessions, signed by Zamora after he was arraigned, were inadmissible. This position is based upon the assumption that the written confessions were the same as those made orally at an earlier hour, and that the exclusion of oral statements would require the rejection of those which were written. When the Court holds, as we do, that the oral confessions were properly received in evidence, the plausibility of the appellant's contention disappears.

■■ The appellant insists that there is no sufficient corroboration of his confessions to permit the conviction to stand. It is well settled that unless corroborated by independent evidence of the corpus delicti, the confessions or extrajudicial admissions of a defendant are not sufficient to sustain a conviction. But the independent evidence is only required to be corroboration. It need not be of itself sufficient to establish guilt. It needs only to show facts in corroboration which, taken with the confession, establish guilt beyond a reasonable doubt. Evans v. United States, 10th Cir. 1941, 122 F.2d 461, cert. den. 314 U.S. 698, 62 S.Ct. 478, 86 L.Ed. 558. The evidence clearly showed losses by the bank from embezzlement at the times and in the amounts charged in the indictment. It was also shown by evidence, largely circumstantial but sufficient to permit a determination beyond a reasonable doubt, that the offenses charged were committed by the appellant. No more is required. The evidence sustains the conviction.

■ Zamora asserts that error was committed by the admission of other offenses than those for which he was being tried. This evidence was of other acts of embezzlement in the course of conduct showing a series of related transactions which diverted funds of the bank to Zamora or to business enterprises of which he was the owner or in which he was substantially interested. Such evidence was clearly admissible. The rule which guides decision in such a case has been stated with clarity and brevity by this Court in these words:

"The general rule is that evidence that the accused committed another

crime independent of and unconnected with the one for which he is on trial is inadmissible. However, the general rule is subject to a number of well-recognized exceptions. Evidence of another crime is admissible where it tends to establish a common scheme, plan, system, design, or course of conduct and where such other crime is so related to the crime charged that it tends to establish the latter, or tends to establish motive, intent, or absence of mistake or accident." Tandberg-Hanssen v. United States, 10th Cir. 1960, 284 F.2d 331. See Morgan v. United States, 10th Cir. 1966, 355 F.2d 43; Caldwell v. United States, 10th Cir. 1929, 36 F.2d 742, cert. den. 281 U.S. 725, 50 S.Ct. 239, 74 L.Ed. 1143. There is no merit in the assertion that evidence of other crimes was improperly admitted.

■■ The appellant requested an instruction, which the court refused to give, which would have made a distinction between "moneys" and "funds and credits", contending that if anything was embezzled from the bank it was money and not funds and credits. The court's refusal to give the instruction was proper. The word "funds" is broader than but in its usual sense includes "moneys." In re Plich's Estate, 141 Colo. 425, 348 P.2d 706. See Bishop v. United States, 8th Cir. 1926, 16 F.2d 406, 19 F.2d 224. The appellant requested an instruction that the bank's deposits were insured at the time in question. The court declined to give the instruction and the refusal is assigned as error. The indictment charged false entries in the records of an insured bank and proof was required that the bank was insured. The evidence showed that a certificate of insurance was issued to the bank in 1950 and was still in force at the time of the trial. The requested instruction was unnecessary and might have confused the jury.

The appellant attacks the sufficiency of the evidence. This contention has been considered and does not require extended discussion. The appellant was fairly tried and the evidence fully warranted the verdict and judgment. No error has been made to appear. The judgment and sentence of the court is

Affirmed.